OPINION
{¶ 1} This is an appeal from a judgment of the domestic relations division of the court of common pleas, denying a post-decree motion to modify a prior order allocating parental rights and responsibilities.
 {¶ 2} The parties, Thomas and Catherine Chapman, were divorced on March 21, 2002. *Page 2 
Thomas[1] was designated residential parent of the parties' three minor children. Catherine was awarded parenting time with the children and ordered to pay child support.
 {¶ 3} In 2003, following emancipation of the oldest of the three children, Catherine was designated residential parent of the next-oldest child, Kelsey. Thomas was ordered to pay child support for Kelsey.
 {¶ 4} On March 21, 2005, Catherine requested the domestic relations court to designate her residential parent of the parties' youngest child, Elizabeth. Catherine alleged in her motion that Elizabeth "expresses significant unhappiness in the current situation, and further that the child desires to relocate to her mother's home and to begin her high school career in the fall of 2005 in the high school in her mother's school district." (Dkt. 155).
 {¶ 5} Catherine's motion was referred to a magistrate pursuant to Civ.R. 53(D)(1)(a). The magistrate conducted a hearing on the motion. On August 16, 2005, Catherine, Thomas, and two of their emancipated children, testified in open court. The magistrate interviewed Elizabeth in chambers, pursuant to R.C. 3109.04(B)(1)(c).
 {¶ 6} On September 26, 2005, the magistrate filed a decision denying Catherine's motion. On that same date, the domestic relations court entered an interim order adopting the magistrate's decision pursuant to Civ.R. 53(D)(4)(e)(ii). With respect to the magistrate's interview of the minor child, the decision states:
 {¶ 7} "This magistrate interviewed the minor child, Elizabeth, in this matter. Elizabeth indicated that her preference would be to live with the defendant, but she was unable to articulate, to this magistrate's satisfaction, any valid reasons. The only reason Elizabeth could really articulate was that she wanted to live with her mother because her sister is presently up *Page 3 
there.[2] Elizabeth acknowledges that the vast majority of her friends reside in the Miamisburg area and that she is very close to her father's side of the family." (Dkt. 79, p. 6).
 {¶ 8} Catherine filed timely objections to the magistrate's decision. She contended that the magistrate failed "to give adequate and proper weight to the wishes and concerns of the minor child." Catherine's application noted that a transcript of the proceedings before the magistrate had been requested and that supplemental objections would be filed upon review of the transcript. (Dkt. 180).
 {¶ 9} Pursuant to a praecipe Catherine filed, transcripts of the proceedings before the magistrate were prepared and were filed on October 27, 2005. The portion of the transcript of the magistrate's in-chambers interview of the minor child were filed under seal, pursuant to Mont.Loc.R. 4.31.
 {¶ 10} Catherine filed supplemental objections to the magistrate's decision on December 9, 2005, in memorandum form. The filing reads, in its entirety:
 {¶ 11} "As can be determined from a review of the Court's interview of the minor child, the child in this case is extremely unhappy in her current situation, and she wishes to live with her sister and mother. Clearly, the deterioration of the child's happiness, along with the introduction of the father's girlfriend (father has now remarried) is a change of circumstances for (Elizabeth). Further, because of the child's age and because of her persistent a [sic] well-established desire to live with her mother, the Magistrate failed to give adequate weight to the wishes and concerns of the child and should have recommended that custody be changed." (Dkt. 186).
 {¶ 12} After its review of Catherine's objections, Thomas's response to the objections, *Page 4 
and the record, the trial court overruled the objections on May 17, 2006. The court stated, in pertinent part:
 {¶ 13} "The magistrate overruled defendant's motion to reallocate parental rights and responsibilities. He found that Elizabeth's primary reason for preferring to reside with defendant resulted from her desire to live with her older sister, Kelsey, who will in all likelihood be attending college within the next three months and will no longer reside with defendant. Furthermore, he found that Elizabeth was unable to articulate any justifiable reason for wanting to live with defendant and that there was a high risk of alienation if a change in custody occurred.
 {¶ 14} "Defendant specifically obj ects to the determination that there was not a change of circumstances warranting a change in custody of Elizabeth. She further argues that the magistrate did not give adequate weight to the wishes and concerns of the child and should have recommended that custody be changed.
 {¶ 15} "It is clear through the testimony that the parties are not amicable toward one another. Further, there is a marked concern for potential alienation by defendant if granted custody of Elizabeth. Moreover, there is uncontroverted testimony concerning defendant's mental health, counseling sessions, suicide attempts, and general well being that raise major concerns about defendant's ability to parent Elizabeth. Further, while the time frame of such remarks is questionable, the oldest children both testified concerning the defendant's demeaning and derogatory characterization of plaintiff in front of the children.
 {¶ 16} "It appears from the record that Elizabeth is thriving in her current situation, evidenced by her grades, friends, and numerous extracurricular activities, and that removing her from plaintiff s custody and placing her in defendant's custody would not be in her best interest. Further, pursuant to R.C. 3109.04(E)(1)(a)(iii), the court finds that under the facts of the case, *Page 5 
the harm likely to be caused by a change of environment is not outweighed by any advantages of the change of environment to the child.
 {¶ 17} "Lastly, the child's wishes are only one factor to be considered pursuant to R.C. 3109.04; it is clear that weight was given to several factors under this statute and that the magistrate made no error in determining that it is in Elizabeth's best interest to remain in plaintiffs custody." (Dkt. 189, pp. 2-3).
 {¶ 18} Catherine filed a timely notice of appeal from the judgment of the domestic relations court. Catherine subsequently asked this court to unseal the transcript of the magistrate's interview of the minor child. We declined to do that, finding that whether the transcript was properly sealed is a merit issue that should be raised in Defendant-Appellant's brief on appeal. However, in a subsequent decision and entry, we ordered bifurcated proceedings on (1) whether the domestic relations court erred in sealing the transcript and (2) the merit issues relating to the court's denial of Catherine's motion to modify its order allocating parental rights and responsibilities for the minor child in favor of Catherine. The case is now before us on the first of those two issues.
FIRST ASSIGNMENT OF ERROR
 {¶ 19} "THE TRIAL COURT ERRED BY IMPROPERLY CONSTRUING § 3109.051 AS A MEANS OF PROHIBITING A PARENT FROM REVIEWING A TRANSCRIPT OF AN IN CAMERA INTERVIEW OF THEIR MINOR CHILD FOR THE PURPOSE OF MAKING A PROPER APPEAL"
SECOND ASSIGNMENT OF ERROR
 {¶ 20} "THE TRIAL COURT ERRED BY IMPROPERLY CONSTRUING § 3109.04, NOT READING THE STATUTE AS A WHOLE IN ORDER TO DETERMINE LEGISLATIVE INTENT" *Page 6 
 THIRD ASSIGNMENT OF ERROR
 {¶ 21} "MONTGOMERY COUNTY LOCAL RULE § 4.31 IS UNCONSTITUTIONAL OR IN THE ALTERNATIVE IS INVALID ACCORDING TO SECTION 5(B) ARTICLE IV OF THE OHIO CONSTITUTION."
 {¶ 22} The three assignments of error present issues that are intertwined. Accordingly, they will be considered together.
 {¶ 23} It appears to be the case, and the parties do not dispute, that the transcript of the magistrate's interview of the minor child was sealed pursuant to Mont.Loc.R. 4.31, which states:
 {¶ 24} "All interviews of children shall be pursuant to the criteria set forth in R.C. 3109.04(B)(2) and 3109.051(C).[3] The transcript of the child's interview shall be sealed and not available to any party or attorney without a court order."
 {¶ 25} Article IV, Section 5(B) of the Ohio Constitution authorizes the Supreme Court to adopt rules of practice and procedure, and further provides that "[a]ll laws in conflict with such rules shall be of no further force or effect after such rules have taken effect." Paragraph 5(C) authorizes courts to adopt "rules concerning local practice in their courts which are not inconsistent with the rules adopted by the supreme court."
 {¶ 26} Civ.R. 53(D)(3)(b)(ii) states: "An objection to a magistrate's decision shall be specific and state with particularity all grounds for objection." Paragraph (iii) of the same rule provides, in pertinent part: "An objection to a factual finding, whether or not specifically designated as a finding of fact under Civ.R. 53(D)(3)(c)(ii), shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that *Page 7 
evidence if a transcript is not available."
 {¶ 27} Appellant has proffered a copy of the domestic relations court's judgment of October 5, 2006, denying her motion to unseal the transcript. The judgment states that Appellant's motion was filed on July 18, 2006. The notice of appeal invoking our jurisdiction was filed on June 16, 2006. No amended or other notice of appeal was filed thereafter. Therefore, any abuse of discretion in denying Appellant's motion of July 18, 2006 is not before us.
 {¶ 28} Nevertheless, a reading of the domestic relations court's judgment denying Appellant's motion to unseal the transcripts is illustrative of that court's purposes in adopting Mont.Loc.R. 4.31, which relies on the interaction of several provisions of R.C. 3109.04(B) and the decisions of several other appellate districts concerning those sections.
 {¶ 29} R.C. 3109.04(B)(1) requires a court that allocates parental rights and responsibilities to "take into account that which would be in the best interest of the children." That same section provides that the court in its discretion may, and "upon the request of either party, shall interview in chambers any or all of the involved children regarding their wishes and concerns with respect to the allocation."
 {¶ 30} The interview provided by R.C. 3109.04(B)(1) is sometimes called an "in camera interview." Black's Law Dictionary (7th Ed.) contains the following definition of incamera:
 {¶ 31} "[Law Latin `in a chamber'] 1. In the judge's private chambers. 2. In the courtroom with all spectators excluded. 3. (Of a judicial action) taken when court is not in session.-Also termed (in reference to the opinion of one judge) in chambers."
 {¶ 32} R.C. 3109.04(B)(2) contains several requirements governing the in camera interview. Section (B)(2)(c) states: "The interview shall be conducted in chambers, and no person other than the child, the child's attorney, the judge, any necessary court personnel, and, *Page 8 
in the judge's discretion, the attorney of each parent shall be permitted to be present in the chambers during the interview." Section (B)(3) states, in part: "No person shall obtain or attempt to obtain from a child a written or recorded statement or affidavit setting forth the child's wishes and concerns concerning the allocation of parental rights and responsibilities . . .," and that "no court . . . shall accept or consider a written or recorded statement or affidavit that purports to set forth the child's wishes and concerns regarding those matters."
 {¶ 33} In a line of cases beginning with Patton v. Patton (Jan. 9, 1995), Licking App. No. 94, and In re Longwell (Aug. 30, 1995), Lorain App. Nos. 94CA006006 and 006007, several courts have read into R.C.3109.04(B) a further requirement that the transcript of the interview should be sealed. A summary of those holdings is set out in the Twelfth District's decision in Willis v. Willis, 149 Ohio App.3d 50,2002-Ohio-3716:
 {¶ 34} {¶ 22} "The first sentence of R.C. 3109.04(B)(3) reads: `No person shall obtain or attempt to obtain from a child a written or recorded statement or affidavit setting forth the child's wishes and concerns regarding the allocation of parental rights and responsibilities concerning the child. ` During the in-camera interview, the child supposedly makes known to the judge his or her wishes and concerns regarding custody. A transcript can be seen as a written or recorded statement setting forth the child's wishes and concerns. [The appellant's] attempt to gain access to the transcript could be interpreted as an attempt to obtain this statement in contravention of R.C. 3109.04(B)(3). * * * It would appear that the legislature intended to prohibit trial courts from relying on potentially fraudulent statements or affidavits produced by the parents. Instead, courts are to obtain the child's wishes and concerns directly from the child during the in-camera interview. * * *
 {¶ 35} {¶ 23} "R.C. 3109.04(B)(2)(c) reads: `The interview shall be conducted in chambers, and no person other than the child, the child's attorney, the judge, any necessary court *Page 9 
personnel, and, in the judge's discretion, the attorney of each parent shall be permitted to be present in the chambers during the interview.' This section clearly provides that the parents may not attend. Further, the parents' attorneys, [who] are no doubt highly partisan advocates of the parents' interests, may attend the interview only with the court's permission. The statute provides that only the child's attorney, an impartial representative of the child's interests, has the right to be present. This section, which in effect insulates the child from any extraneous influences during the interview, suggests that the General Assembly intended to create a `stress-free environment * * * [so that] [children should display candor in setting forth their feelings' regarding custody. Patton v. Patton (Jan. 9, 1995), Licking App. No. 94 CA 40, unreported at 3 [1995 WL 42497]. Affording parents access to the transcript would contravene this intent. Id. The child would be less likely to be candid with the judge if the child knows that his or her parents will later read everything the child says.
 {¶ 36} {¶ 24} "The dissent in Patton argued that any semblance of confidentiality is illusory, because the child's choice of custodial parent will eventually be revealed in open court. * * * We think this confidentiality serves more fundamental purposes * * *. Domestic relations judges typically use the in-camera interview to discuss a wide variety of issues, including any problems the child may be having with parents, step-parents, siblings, etc. In this way, the judge can identify areas of potential trouble, and may discover, inter alia, that the intervention of a social worker is necessary, or that a new hearing on visitation should be held. We believe that judges should be allowed to keep their private conversations with the children of divorced parents confidential, as many times it is only this promise of confidentiality that convinces these embattled children to speak freely. If we were to accept [appellant's] invitation to declare such practices to be reversible error, we would in effect be depriving domestic court judges of an important tool in gathering information useful not only for making sound custody decisions, but *Page 10 
also for addressing the problems of the whole family. In reLongwell (1995), Lorain App. Nos. 94 CA 006006 and 94 CA 006007,1995 WL 520058, at * 3-4, 1995 Ohio App. LEXIS 3825, at * 8-12.
 {¶ 37} {¶ 25} "The Fifth Appellate District, in turn, aptly noted that `[c]hildren should display candor in setting forth their feelings * * *. The interview is recorded for the purpose of protecting the parties in that an appellate court may review the recorded interviews and determine whether undue influence has been exerted, or whether the court has made proper findings of fact regarding the in chambers interviews.'Patton, Licking App. No. 94 CA 40, 1995 WL 42497, at * 3, 1995 Ohio App. LEXIS 357, at * 9.
 {¶ 38} {¶ 26} "We find that the foregoing analysis, combined with an appellate court's review of in-camera interviews of children, well protects the rights of the parents while at the same time ensures that children's statements made during the interview remain confidential. We therefore hold that interviews of children conducted under R.C. 3109.051
are confidential and are not to be disclosed to the parents. We further hold that the parents of a child that is the subject of a visitation dispute do not have the right of access to the sealed transcript of the in camera interview between the child and the judge. See, also, Beil v.Bridges (July 13, 2000), Licking App. No. 99CA00135, 2000 WL 977221
(holding that based upon Patton, the sealing of transcripts of children's in-camera interviews did not violate the parents' due process rights)." Willis, ¶ 22-26.
 {¶ 39} In Myers v. Myers, Licking App. No. 2006 CA 00026,2007-Ohio-66, the Fifth District again refused to provide a mother with transcripts of the in camera interviews of her minor children, noting that such "reasoning is in conformity with the general proposition that the overriding concern of courts in custody cases must be the best interests of the child, which may, at times, conflict with the due-process rights of the parents. `However, due process is a *Page 11 
flexible concept and only requires the procedural protection that a particular situation warrants.' (Internal citation omitted). The due process rights of the parents must, therefore, be balanced against the best interests of the child.
 {¶ 40} "The requirement that the in camera interviews be recorded is designed to protect the due-process rights of the parents. The due-process protection is achieved in this context by sealing the transcript of the in camera interview and making it available only to the courts for review. This process allows appellate courts to review the in camera interview proceedings and ascertain their reasonableness, while still allowing the child to `feel safe and comfortable in expressing his or her opinions honestly and openly, without subjecting the child to any additional psychological trauma or loyalty conflicts.'" (Internal citations omitted). We note the distinction between a proceeding to determine custody and one to terminate parental rights; in a termination proceeding, the parties "must be afforded every procedural and substantive protection the law allows." In re Smith,77 Ohio App.3d 1, 16, 601 N.E.2d 45.
 {¶ 41} A minority view was adopted by the Fourth District in Inscoe v.Inscoe (1997), 121 Ohio App.3d 396, which "reasoned that if the legislature had intended to deny the parents access to a transcript of their child's in-camera interview, the legislature would have clearly stated that in R.C. 3109.04(B)," and it did not. Id., at 420. The court further observed that without the transcript the parties cannot effectively challenge the court's determinations with respect to the wishes of the child expressed. The court went on to state:
 {¶ 42} "While we understand the rationale and purpose between thePatton and Longwell decisions, we believe that those decisions read into R.C. 3109.04 language that simply is not there. Although we agree that children may be more candid and forthright during a confidential interview, we must not construe R.C. 3109.04 to achieve a result beyond the clear language of the statute. *Page 12 
 {¶ 43} "We emphasize that we may not `restrict, constrict, qualify, narrow, enlarge, or abridge' the clear meaning of a statute. InWachendorf v. Shaver (1948), 149 Ohio St. 231, 36 O.O. 554,78 N.E.2d 370, paragraph five of the syllabus, the court held:
 {¶ 44} "`The court must look to the statute itself to determine legislative intent, and if such intent is clearly expressed therein, the statute may not be restricted, constricted, qualified, narrowed, enlarged or abridged; significance and effect should, if possible, be accorded to every word, phrase, sentence and part of an act, and in the absence of any definition of the intended meaning of the words or terms used in a legislative enactment, they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in the connection in which they are used.' See, also, State ex rel. Smith v.Columbus (1986), 28 Ohio St.3d 94, 28 OBR 189, 502 N.E.2d 608; State exrel. McGraw v. Gorman (1985), 17 Ohio St.3d 147, 17 OBR 350,478 N.E.2d 770." Inscoe, at 421.
 {¶ 45} We agree that the transcript of an in camera interview with a child must not be made available to the parents absent a court order. Too often, the children of divorce are beset with "psychological trauma" and "loyalty conflicts" due to the behavior of their parents. We have noted in the past "a recurring and regrettable tragedy in our society — the use of children as pawns in a war between divorced and embittered parents. Truly, such a war has no victors and the ultimate casualties are the children, who stand to suffer deeply and permanently unless their parents can learn to control their hostility and anger towards each other. We have previously emphasized, and stress once again, that children have certain rights, including `the right to love each parent, without feeling guilt, pressure, or rejection; the right not to choose sides; the right to have a positive and constructive on-going relationship with each parent; and most important * * * the right to not participate in the painful games parents play to hurt each other or to be put in the middle of their battles.'" Bell v. Bell (June 5, 1998), Clark App. No. 97-CA-105. Children *Page 13 
of divorce "did not ask to be separated from either parent, * * * did not ask to choose between people who love them, and * * * [they] have little control over decisions and actions that greatly affect their lives." Id.
 {¶ 46} In a custody dispute, the best interest of the child is cardinal. R.C. 3109.04(B)(2)(c) makes clear the legislative intent to provide an in camera atmosphere free of influence, pressure and anxiety so that, if appropriate, a child can participate in the determination of his or her custody. While the court eventually reveals the child's choice of custodial parent in open court, all confidentiality from the in camera interview is not lost or illusory. Sealing the transcript protects the court's ability to gather information not only about the child's custody preference but also about any other problems the family may be experiencing. If one or both parents inappropriately involves a child in the custody dispute, or attempts to influence or manipulate a child, or alienate the other parent from a child, the court's ability to glean this information is strengthened by the sealing of the transcript. A court's inquiry, for example, may include questions such as, "Tell me the things you like, and then tell me the things you don't like about your mom/dad?" If a child believes that every word he or she speaks to the judge may later be read by his or her parents, the child may withhold information and the court's decision-making process may thereby be compromised. To allow parents access to the transcript of their child's in camera interview defeats the statute's purpose to foster candor and also exposes the child to a parent's potentially hostile reaction to the child's words. It is in the best interest of a child, a child who has already been betrayed by the departure of one parent from his or her home, to be able to speak freely without concern of in turn betraying his or her parent.
 {¶ 47} The child herein was not promised confidentiality, and no especially personal or difficult matters were discussed during the in camera interview. The dissent would order *Page 14 
transcripts sealed on a case-by-case basis, and in a matter such as this, where the child is made aware, without objection, that her parents may read her words, leave the transcript unsealed. Catherine's mental health problems, counseling, suicide attempts, and history of disparaging Thomas in front of her children, however, are suggestive of an emotional instability and further convince us that maintaining the seal on the transcript is in the child's best interest.
 {¶ 48} The dissent would require a court that chooses to seal a transcript to justify the need for confidentiality "on the basis of particularized findings of need." We believe this practice to be overly burdensome for the already overly burdened domestic relations magistrates and judges; the burden should instead be borne by the parent who may petition the court for disclosure of the in camera interview.
 {¶ 49} We disagree with the dissent's analysis that Mont.Loc.R. 4.31 is at least "inconsistent with" the mandate of Civ.R. 53(D)(3)(b)(ii). According to the dissent, the local rule prevents access to a transcript which the civil rule requires a party to file. However, as noted above, a party may seek an order allowing access and, even if access is denied, may still raise an assignment of error on the in camera issue and obtain appellate review. In other words, the filing of a transcript of the evidence under seal, as required by Mont. Loc.R. 4.31, satisfies the local rule; the transcript of the evidence is available, albeit under seal, for the trial judge to review in determining whether the objection is well-taken.
 {¶ 50} The often excruciating nature of the decision that a court is called upon to make, between combatants in a custody dispute, mandates that every precaution be taken to insure that a child feel at ease, in order to be candid with the court. The risk of exposure to any parental emotional fallout based on the child's remarks should be minimized or eliminated. The domestic relations court did not err in sealing the transcript. Judgment affirmed. *Page 15 
FAIN, J., concurs.
[1] For clarity and convenience, the parties are identified by their first names.
[2] Catherine's residence is in Sunbury, Ohio, in Delaware County.
[3] R.C. 3109.051(C) pertains to grandparent visitation and contains provisions similar to those of R.C. 3109.04(B)(1), (2)(c), and (3) concerning the in camera interview.