OPINION
{¶ 1} Melissa Cobb appeals from a judgment of the Miami County Court of Common Pleas, Juvenile Division, which designated Michael Kost the primary residential parent and legal custodian of their daughter, S.M.K., and which adopted the magistrate's decision not to replace the appointed guardian ad litem. For the following reasons, the trial court's judgment will be affirmed.
 I *Page 2 {¶ 2} Melissa Cobb and Michael Kost are the parents of S.M.K., who was born in May 2000. Cobb and Kost have never been married. Cobb and Kost lived as a family in Kost's home with S.M.K. and B.C., Cobb's daughter from a prior relationship.
 {¶ 3} In January 2007, Cobb moved from the residence, taking S.M.K. and B.C. with her. Cobb moved in with Jeffrey Sieffers, a married man, and Sieffers' daughter. Kost then filed a complaint for paternity and to allocate parental rights, seeking custody of S.M.K. The trial court initially granted temporary custody to Cobb.
 {¶ 4} In March 2007, the trial court appointed Kathryn Huffman to be the guardian ad litem. On May 29, 2007, Huffman filed her guardian ad litem report. The report indicated that Kost was employed and lived in a clean appropriate home. Kost lives near to his mother and stepfather, and Huffman observed S.M.K. with them. Huffman stated that S.M.K. was "very comfortable" with her paternal grandparents, and noted that Kost's mother set appropriate limits. In contrast, Huffman stated that Cobb was unemployed, had no driver's license, and was living with Sieffers, a supervisor for 911. Huffman described Cobb's home as follows:
 {¶ 5} "The house is a two story with a living area, kitchen, four bedrooms, one bathroom and basement. The house is extremely dirty. All the windows are covered and there is no natural light. There is a very strong odor of smoke and pet odor. The floor is covered with dirt and shoes, papers, etc. The refrigerator was broken and they were using a counter size refrigerator. [S.M.K.] shares a bedroom with [B.C.] [S.M.K.] sleeps on a stained mattress with no linens. There was a full cat litter box surrounded by feces. The second story window next to [S.M.K.]'s bed was open with no screen and severely peeling paint. There is a large area of dirt or mold on the wall." *Page 3 
 {¶ 6} The report further indicated that S.M.K. had an individual education plan ("IEP") for reading and speech. Her teacher indicated concerns about absences and failure to complete her homework assignments.
 {¶ 7} Huffman recommended that Kost be given custody of S.M.K.
 {¶ 8} After Huffman's report was filed, Kost moved to reallocate temporary custody. The court awarded temporary custody to Kost and granted visitation to Cobb. On September 7, 2007, Kost moved to suspend visitation due to Cobb's inability to provide a safe and healthy environment for S.M.K. Kost alleged that Cobb's residence was the source of repeated lice infestations. Cobb contested this assertion and provided an affidavit that her home and its residents were lice-free. Cobb asserted that Kost's home was the source of the lice problem. The trial court suspended visitation but reinstated it after one week.
 {¶ 9} On September 18, 2007, Huffman filed a supplemental GAL report, which concluded that S.M.K. had adjusted well to the change in residence and "appears comfortable and well cared for in her father's home." The report noted that Kost's mother and stepfather played a significant role in S.M.K.'s care, and that she "benefits from her grandparents' involvement." Huffman noted that S.M.K. had good school attendance except for days that she missed due to lice infestations. Because S.M.K. had spent time with both parents, Huffman found that the source of the infestation was hard to trace and noted that it had been remedied.
 {¶ 10} On the same day that Huffman filed her supplemental report, Cobb filed a motion to replace Huffman as the guardian ad litem, alleging that there was a professional and personal relationship between Huffman and Jay Lopez, Kost's *Page 4 
attorney, creating an appearance of impropriety.
 {¶ 11} On September 20, 2007, the magistrate held a hearing on the allocation of parental rights. At the beginning of the hearing, the magistrate took under advisement Cobb's motion to remove and replace Huffman, and it asked the parties to brief the issue by September 28, 2007. During the hearing on the allocation of parental rights, Cobb's counsel agreed to the admission of the guardian ad litem reports in lieu of Huffman's testimony.
 {¶ 12} Following the hearing, the magistrate named Kost as the residential parent and legal guardian of S.M.K., and it awarded visitation to Cobb. In a separate entry, the magistrate overruled Cobb's motion to replace Huffman as the guardian ad litem.
 {¶ 13} Cobb filed objections to both magistrate decisions. The trial court overruled the objections and adopted the magistrate's decisions as its own.
 {¶ 14} Cobb appeals, raising four assignments of error.
 II {¶ 15} "THE TRIAL COURT ERRED IN NOT ORDERING A PSYCHOLOGICAL AND/OR PSYCHIATRIC EXAMINATION OF THE FATHER AFTER HEARING THE TESTIMONY AT THE HEARING."
 {¶ 16} In her first assignment of error, Cobb contends that the magistrate should have, sua sponte, required Kost to undergo a psychological or psychiatric examination after hearing evidence that Kost engaged in child abuse and exposed children to pornography.
 {¶ 17} R.C. 3109.04(C) provides that, "[p]rior to trial, the court *** may order the *Page 5 
parents and their minor children to submit to medical, psychological, and psychiatric examinations. The report of the *** examinations shall be made available to either parent or the parent's counsel of record not less than five days before trial, upon written request." The decision whether to order a psychological evaluation lies in the trial court's sound discretion. Mangan v. Mangan, Greene App. No. 07-CA-100,2008-Ohio-3622, ¶ 16.
 {¶ 18} Cobb asserts that "the severity of the need for this type of curative investigation did not become obvious and indisputable until the hearing." She cites to testimony by B.C. that Kost had hit her with a leather belt on her thighs, had disciplined her by placing duct tape on her face, and had locked her and S.M.K. in a bedroom and removed the doorknobs. B.C. further testified that Kost's screen savers on his computer were of naked women. Cobb also cites testimony that Kost took S.M.K. to the race track with him.
 {¶ 19} Although Cobb asserts that this evidence was first presented at the trial, B.C. testified that she had told her mother about the incidents prior to trial. Cobb acknowledged at trial that she was present when Kost placed duct tape on B.C.'s mouth and that she removed the duct tape. Cobb testified that she decided not to call the police about these incidents of abuse because she was "trying to make things work" with Kost.
 {¶ 20} Based on the record, it is apparent that Cobb was aware of the alleged instances of abuse and could have requested a psychological or psychiatric evaluation of Kost prior the trial. No request for an evaluation was made. We find no abuse of discretion in the trial court's failure to order a psychological or psychiatric evaluation, *Page 6 
sua sponte, after the trial.
 {¶ 21} The first assignment of error is overruled.
 III {¶ 22} Cobb's second and third assignments of error both concern the trial court's analysis under R.C. 3109.04, and they will be addressed together.
 {¶ 23} "THE TRIAL COURT ERRED IN ITS APPLICATION OF O.R.C. § 3109.04
TO THIS RECORD OF THIS CASE."
 {¶ 24} "THE TRIAL COURT ERRED IN ITS APPLICATION OF O.R.C. § 3109.04
WHEN THERE WAS UN-REBUTTED EVIDENCE OF CHILD ABUSE BY THE FATHER."
 {¶ 25} In her second assignment of error, Cobb asserts that the trial court failed to properly consider the factors set forth in R.C. 3109.04(F)(1) in determining that it was in S.M.K.'s best interest to be placed with Kost as the residential parent. In her third assignment of error, Cobb focuses on the factor relating to whether a parent had engaged in child abuse.
 {¶ 26} R.C. 3109.04(F)(1) requires the trial court to consider all relevant factors in determining the best interest of a child. These factors include, but are not limited to: the wishes of the parents; the child's interactions and interrelationships with parents, siblings, and other persons who may significantly affect the child's best interest; the child's adjustment to home, school and community; the mental and physical health of all persons involved in the situation; whether a parent has failed to make child support payments; whether a parent is more likely to facilitate visitation; whether a parent has or is planning to establish a residence outside the state; and whether there is reason to *Page 7 
believe that a parent has abused a child. Id.
 {¶ 27} "A trial court's determination regarding parental rights should be given great deference and will not be disturbed on appeal absent an abuse of discretion." Silver v. Silver, Clark App. No. 2006 CA 47,2007-Ohio-2606, ¶ 11, citing Miller v. Miller (1988), 37 Ohio St.3d 71,74, 523 N.E.2d 846.
 {¶ 28} Cobb claims that the trial court did not properly consider S.M.K.'s relationship with B.C., S.M.K.'s progress at her current school in Piqua, Kost's likelihood of honoring visitation orders, Kost's mental health, and the evidence regarding Kost's abusive behavior toward B.C. and S.M.K.
 {¶ 29} In its decision, the magistrate found that S.M.K. was emotionally bonded to both parents and that both parents loved her. The magistrate noted that S.M.K. had expressed an interest in living with her sister and that S.M.K. had developed a good relationship with Sieffer's daughter, who would be in the role of an older sister. The magistrate further noted, however, that Huffman had described B.C. "as wearing lots of eye make up and not much clothing." B.C. was a source of conflict between Cobb and Kost. The magistrate further found that S.M.K. had a "bonded relationship" with her paternal grandparents, that they provided child care for S.M.K. while Kost worked, and that they ate together at least twice per week. Each of these findings were adopted by the trial court. We find no evidence that the trial court failed to take S.M.K.'s desire to live with her sister into consideration when finding that Kost should be the residential parent.
 {¶ 30} We also find no evidence that the trial court failed to consider S.M.K.'s good school performance while in Piqua schools. According to the record, S.M.K. *Page 8 
initially attended Hook Elementary in Troy and was transferred to Spring Creek Elementary in Piqua. While at Hook, S.M.K. was enrolled in IEP classes, and she had an IEP teacher. The IEP continued at Piqua schools. In May 2007, Huffman reported that S.M.K.'s first grade teacher at Spring Creek had concerns about S.M.K.'s absences and failure to complete her work. The teacher informed Huffman that three of six homework assignments had not been completed. In September 2007, S.M.K.'s second grade teacher informed Huffman that S.M.K. is very social, always appropriately dressed, completes her homework, and has good attendance other than the days missed due to lice. S.M.K. has been progressing well in math but still has difficulties in reading, spelling, and speech. Kost's mother has taken S.M.K. to school. Kost testified that S.M.K. would attend Hook Elementary if he were the custodial parent.
 {¶ 31} Although the record supports Cobb's assertion that S.M.K. has progressed in some subjects while attending Piqua schools, the record indicates that S.M.K.'s improved attendance and completion of homework have been significant factors in S.M.K.'s improved performance. S.M.K.'s school attendance and completion of homework was poor while she was living with Cobb, but has been good since she started living with Kost. We find no evidence that S.M.K.'s performance would suffer if she were to attend Hook Elementary rather than Spring Creek Elementary.
 {¶ 32} Cobb asserts that the trial court erred in finding that Kost would honor parenting and visitation orders. Cobb asserts that Kost refused to keep her informed about doctor, dental and school appointments; refused to provide health insurance for S.M.K.; had his telephone disconnected, making contact difficult; and refused to follow *Page 9 
the trial court's order that reinstated visitation. The magistrate recognized these complaints in her findings.
 {¶ 33} Cobb acknowledged that, other than the two days after visitation was reinstated, Kost had not denied her visitation with S.M.K. while he was the custodial parent. Cobb also acknowledged that Kost had agreed to allow S.M.K. to spend an extra day with her on Labor Day. Cobb stated that she had cancelled one of her visits. As for her ability to contact Kost, Cobb stated that S.M.K. has called her several times from Kost's mother's home. Although there was evidence that Kost's cellphone had been disconnected, Kost was reachable through his mother. The record further reflected that Kost had obtained routine medical, dental and optical care for S.M.K. when she was in his custody. Based on the record, we find no error in the trial court's conclusion that both parents would equally honor visitation and parenting orders.
 {¶ 34} Next, Cobb argues that the trial court should have investigated Kost's mental health and intelligence, considering his abusive discipline and his failure to understand the court's order reinstating visitation. We disagree. We concluded, supra, the trial court did not err in failing to order a psychological evaluation. Moreover, as stated by the trial court, "if there were a concern about [Kost's] level of intelligence, that was surely nothing new that came up during trial and should have been raised earlier in the proceeding. Mr. Kost completed a high school diploma and one year of auto body at the J.V.S. If Mr. Kost holds a full time job for Honda, which he was offered after working for them through a temp agency, he must surely have at least average intelligence."
 {¶ 35} Cobb's primary argument — and her third assignment of error — is that the *Page 10 
trial court ignored unrebutted testimony that Kost had engaged in child abuse. Cobb emphasizes that R.C. 3109.04(F)(1)(h) requires the trial court to consider "whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child."
 {¶ 36} At the final hearing, B.C. testified that Kost would discipline her by smacking her or placing her in corners. B.C. stated that Kost once taped her face with duct tape, and that he hit her on the thighs with a leather belt. B.C further related that Kost locked her and S.M.K. in their bedroom, and later took the handles off of the door after B.C. picked the lock so that S.M.K. could use the bathroom. B.C. testified that Kost also hit Cobb in the face.
 {¶ 37} Cobb testified that she was in the bathroom when Kost taped B.C.'s mouth with duct tape, and that she grabbed a pair of scissors and cut it off after when she saw it. Cobb stated that she did not call the police because she "was actually trying to make things work" with Kost. Cobb also stated that Kost had hit her. There was no evidence that Kost had hit S.M.K.
 {¶ 38} The magistrate did not directly address this testimony but concluded that "there is no evidence on the factors set forth in Ohio Revised Code Section 3109.04(F)(1)(g), (h), (i) or (j)." In overruling Cobb's objections to the magistrate's decision, the trial court stated that these behaviors, if believed, demonstrated "poor parenting" on Kost's part. The court noted, however, that there was no evidence that Kost's discipline was ongoing, excessive or for prolonged periods of time. The court found that there was no evidence that Kost's behavior created a "substantial risk of serious physical harm" or "seriously impaired] or retard[ed] the child's mental health or *Page 11 
development." The court concluded: "While this manner of discipline is ill-advised, there is no proof that it is worse than the total lack of discipline (as alleged by the father) as attributed to the mother. It appears that Ms. Cobb's lack of discipline resulted in Mr. Kost responding in inappropriate discipline."
 {¶ 39} We find no fault with the trial court's reasoning.
 {¶ 40} Other evidence also supported the trial court's determination that placement with Kost was in S.M.K.'s best interest. Most notably, the trial court found that Cobb had a history of poor housecleaning, and Cobb had previously lost custody of B.C. due to the poor condition of her household. In May 2007, the guardian ad litem had noted the poor condition of Cobb's residence and, although vast improvements had been made, Huffman was not convinced that Cobb could maintain the improvements. Huffman recommended that Kost be named the residential parent in her report, and she indicated that none of the evidence at the hearing had altered her conclusion.
 {¶ 41} The trial court did not err in concluding that it was in S.M.K.'s best interest that Kost be designated as her residential parent and legal custodian.
 {¶ 42} The second and third assignments of error are overruled.
 IV {¶ 43} "THE TRIAL COURT ERRED WHEN IT REFUSED TO REMOVE THE COURT APPOINTED GAL AND DISMISS HER REPORT AFTER A SHOWING OF AN APPEARANCE OF IMPROPRIETY WAS PLACED BEFORE THE COURT."
 {¶ 44} In her fourth assignment of error, Cobb claims that the trial court erred in failing to replace the guardian ad litem due to an appearance of impropriety. We *Page 12 
review the trial court's decision whether to remove and replace a guardian ad litem for an abuse of discretion. In re M.E.H., Washington App. No. 08CA4, 2008-Ohio-3563, ¶ 25.
 {¶ 45} Cobb asserts that Huffman was once a member of the Huffman law firm, which was formerly known as Huffman, Landis, Weaks Lopez. Cobb states that the father of Kost's attorney was a former partner of Huffman's deceased father-in-law and had a professional relationship with many of Huffman's family members. Cobb thus argues that this relationship "between the GAL, her family and the attorney representing the father created an appearance of impropriety demanding that the GAL be removed and another GAL be appointed without this historical baggage tainting any observations or opinions." Cobb supported her motion to remove and replace Huffman with an affidavit indicating that Huffman had not treated her respectfully or fairly.
 {¶ 46} In opposing Cobb's motion to remove Huffman as the GAL, Huffman filed an affidavit stating: "I have no personal relationship or professional affiliation to either party or attorney in this case." She stated that her recommendation "[was] based upon the facts, as verified in my investigation, taking into consideration the concerns of the parties. Based upon my investigation, experience and training, I believe my recommendation to be in the best interest of [S.M.K.]."
 {¶ 47} Jay Lopez, Kost's attorney, also filed an affidavit, which stated in part:
 {¶ 48} "4. In my adult life, I have never met the Guardian Ad Litem appointed by the Court in this case, Kathryn Huffman, prior to this litigation.
 {¶ 49} "5. Counsel for the Defendant, David Beitzel, attended my high school graduation party. *Page 13 
 {¶ 50} "6. My relationship with the Guardian Ad Litem and the opposing counsel in no way affected by ability to advocate for my client."
 {¶ 51} In overruling the motion to replace Huffman, the magistrate rejected Cobb's assertion that the role of the guardian ad litem was quasi-judicial. The magistrate emphasized that a guardian ad litem is an advocate for the child's best interest, and the court must assess the credibility of the GAL, as with any other witness. The magistrate found that there was no familial relationship between Huffman and Lopez; that there was no evidence of inappropriate contact between Huffman and Lopez; and that there was no evidence that Huffman knew of the Cobb/Kost family prior to her appointment. The magistrate concluded that any issue of bias or prejudice was a credibility issue for the court.
 {¶ 52} In adopting the magistrate's ruling, the trial court noted that the magistrate "very succinctly set forth the purpose of the Guardian ad litem is to advocate for the child and she has done that quite well. Ms. Cobb challenges her recommendations but did not choose to cross-examine her when the opportunity was presented."
 {¶ 53} We find no abuse of discretion in the trial court's decision not to remove and replace the guardian ad litem. Although Cobb asserted that members of Huffman's and Lopez's families knew each other, there was no evidence of any relationship between Huffman and Lopez and no evidence that they had had inappropriate contact.
 {¶ 54} The fourth assignment of error is overruled.
 {¶ 55} In closing, we are constrained to point out to Kost's counsel that his brief *Page 14 
does not comply with App. R. 16(B). He contends that Cobb's statement of facts is inaccurate, but he has not provided a statement of facts on behalf of Kost. He is required to do so if dissatisfied with Cobb's statement of facts. Id.
 V {¶ 56} Having overruled all assignments of error, the judgment of the trial court will be affirmed.
GRADY, J. and DONOVAN, J., concur.
Copies mailed to:
Jay M. Lopez
David E. Beitzel
 Hon. Lynnita K.C. Wagner *Page 1