MYERS, Appellee,

v.

MYERS, Appellant.

[Cite as *Myers v. Myers,* 170 Ohio App.3d 436, 2007-Ohio-66.]

Court of Appeals of Ohio,
Fifth District, Licking County.

No. 2006 CA 00026.

Decided Jan. 9, 2007.

438

Southeastern Ohio Legal Services and Benjamin D. Horne, for appellant.

David L. Martin, for appellee.

EDWARDS, Judge.

{¶ 1} Defendant-appellant, Kellie S. Myers, appeals the judgment of the Licking County Court of Common Pleas, Domestic Relations Division, in which the trial court sua sponte revoked appellant's residential-parent status, placed conditions on the appointment of a guardian ad litem, and denied appellant access to the audio tapes of an in camera interview with the appellant's minor children. Plaintiff-appellee is Harold L. Myers.

## STATEMENT OF FACTS AND LAW

{¶ 2} Appellant and appellee were married on May 15, 1993, and had two children: Kalee D. Myers, born August 9, 1993, and Angela M. Myers, born November 21, 1996. On August 20, 2003, appellee filed a complaint for divorce. Appellant, who was represented by Legal Aid, filed an answer and counterclaim, together with an affidavit of indigency, on November 20, 2003.

{¶ 3} On July 7, 2004, the trial court entered a judgment decree of divorce in which it, inter alia, designated the appellant as residential parent of the two minor children and stated:

{¶ 4} "The Court shall interview both children. Based on the information obtained at the interview, the Court may have a further hearing to modify the residential parent status of the children.

{¶ 5} "The Court shall also direct the Court investigator to view and investigate each parties [sic] residence, without prior notice if possible. The Court shall also use this information plus the information obtained from the children, at a further hearing, if the Court believes a further hearing is necessary."

{¶ 6} On or about April 20, 2005, appellant was contacted by the court's docket administrator to arrange a time for the child interviews. The docket administrator wanted to schedule the interviews for May 10, 2005. Appellant asked whether the interviews could be scheduled for May 20, 2005, because she was scheduled to be off from work on that day. The docket administrator advised appellant that she would ask the trial court judge and call appellant back. The docket administrator contacted appellant on or about April 27, 2005, to further discuss the scheduling of the interviews, at which time appellant asked if she could have a guardian ad litem ("GAL") appointed for the children. Appellant was told that it was possible to have a GAL appointed for the children and advised appellant to contact Legal Aid for assistance. As appellant understood it, the scheduling of the interviews was left open until after the appointment of a GAL.

{¶ 7} Appellant contacted Southeastern Ohio Legal Services for assistance in the GAL-appointment process and was advised that since her case was closed in 2004 following the entry of the judgment decree of divorce, she would have to be reinterviewed for financial eligibility. Following that interview, appellant was told that she was above the federal poverty level and therefore not eligible for assistance. However, Legal Aid would nevertheless provide her with the forms necessary to prepare a pro se motion for appointment of a GAL.

{¶ 8} On May 10, 2005, the trial court issued a sua sponte judgment entry in which it found that the appellant had failed to cooperate with the requested interview with the children, revoked her status as residential parent, and ordered

that appellee be immediately designated residential parent. On May 11, 2005, appellant received that judgment entry from the court, as well as a packet from Legal Aid containing the forms necessary to file a motion for appointment of a GAL. On May 12, 2005, appellant filed a pro se motion for reconsideration of the May 10, 2005 decision, together with a pro se motion for appointment of a GAL. In her motion for appointment of a GAL, appellant asked the court to waive or tax as costs any court fees or deposits, because she was indigent as indicated in her affidavit of indigency previously filed with the court.

{¶ 9} On June 22, 2005, the trial court issued two judgment entries. In the first, it remanded the matter to the magistrate in response to appellant's motion for reconsideration; in the second, it instructed the appellant to deposit $500 with the clerk of courts on or before July 21, 2005, as an initial deposit for the appointment of the GAL, and stated further that if appellant failed to deposit that sum, her request for appointment of a GAL would be nullified.

{¶ 10} On July 8, 2005, the magistrate issued an order in which he scheduled an oral hearing on the residential-parent issue and an in camera interview with the minor children. On July 19, 2005, appellant, who was once again represented by Legal Aid, filed a motion to tax the GAL fees as costs. Appellant attached an affidavit to her motion in which she outlined her income and expenses, which illustrated the fact that she was barely able to make ends meet. Based upon her financial status, appellant asked the court, pursuant to Local Rule 29.15(b), to tax the GAL fees as costs.

{¶ 11} On July 25, 2005, the trial court denied appellant's motion to tax the GAL fees as costs because of the "significant variance" in appellant's reported income. In November 2003, appellant had reported her annual income as approximately $15,303; in December 2003 she reported her annual income as approximately $19,322; and, in July 2005 she reported her annual income as approximately $16,128. Appellant had indicated in her income statements that the amounts were estimates, because her income fluctuated slightly depending upon whether she had an opportunity to work overtime. On August 1, 2005, appellant filed a motion for reconsideration of the court's July 25, 2005 judgment entry regarding the GAL fees, which the trial court denied without opinion on August 3, 2005.

{¶ 12} On August 5, 2005, the magistrate conducted an oral hearing regarding custody and on August 8, 2005, conducted an in camera interview of the minor children. On October 31, 2005, the magistrate issued a decision in which he found, in an "extremely close call," that it was in the best interests of the children for him to designate appellee as residential parent. The record of the August 5, 2005 hearing was not provided to this court.

{¶ 13} On November 10, 2005, appellant filed objections to the magistrate's decision, together with a motion to review tapes of the in camera interview. On November 15, 2005, the trial court denied without opinion appellant's request to review the audio tapes. On January 13, 2006, the trial court issued an opinion in which it addressed the request to review audio tapes of the in camera interview, as well as the GAL issue. The court opined that case law interpreting R.C. 3109.04(B)(3) provided that records of in camera interviews of children in custody cases are not discoverable by the parties or their counsel. The court also stated, with regard to the guardian ad litem issue, that the appellant had "simply failed to accurately state her financial status," that the deposit condition stood, and when appellant failed to deposit $500 with the clerk of courts on or before July 21, 2005, Local Rule 29.15(a) operated to waive appellant's GAL request.

{¶ 14} On February 6, 2006, the trial court issued a judgment entry in which it adopted the magistrate's decision, and the appellant appealed, setting forth the following assignments of error:

{¶ 15} "I. The trial court erred in failing to appoint a guardian ad litem.

{¶ 16} "II. The trial court erred as a matter of law in changing custody sua sponte after ten months, without any showing of an emergency need to do so, based on evidence not in the record, without a motion by either parent, notice to either party, or a prompt post-change hearing.

{¶ 17} "III. The trial court erred as a matter of law in not allowing appellant's attorney access to the transcript of the child interviews."

I

{¶ 18} In her first assignment of error, the appellant argues that the trial court erred in failing to appoint a guardian ad litem. We agree.

{¶ 19} R.C. 3109.04 provides the process for the allocation of parental rights and responsibilities for the care of children. With regard to the appointment of a guardian ad litem, the statute states:

{¶ 20} "(B)(1) When making the allocation of the parental rights and responsibilities for the care of the children under this section in an original proceeding or in any proceeding for modification of a prior order of the court making the allocation, the court shall take into account that which would be in the best interest of the children. In determining the child's best interest for purposes of making its allocation of the parental rights and responsibilities for the care of the child and for purposes of resolving any issues related to the making of that allocation, the court, in its discretion, may, and upon the request of either party shall, interview in chambers any or all of the involved children regarding their wishes and concerns with respect to the allocation.

{¶ 21} "(2) If the court interviews any child pursuant to division (B)(1) of this section, all of the following apply:

{¶ 22} "(a) The court, in its discretion, may *and, upon the motion of either parent, shall* appoint a guardian ad litem for the child." (Emphasis added.)

{¶ 23} The statute clearly mandates that if a parent moves the trial court to appoint a guardian ad litem when the child is to be interviewed in camera, the court is required to do so.

{¶ 24} Rule 29.15 of the Rules of Court for the Licking County Common Pleas Court, Domestic Relations Division, states:

{¶ 25} "Fees. A Guardian Ad Litem shall be entitled to fees at a rate to be determined by the Court which shall be made available to all concerned prior to the appointment.

{¶ 26} "(a) The Court may require a party requesting a Guardian Ad Litem to deposit with the clerk a bond to secure the fee for the Guardian Ad Litem. Upon application and approval by the Court, the fee deposited shall be released to the Guardian Ad Litem. If the party fails to deposit the bond, the request for a Guardian Ad Litem may be deemed to be waived."

{¶ 27} It is this local rule upon which the trial court based its decision that the appellant's request for a GAL was waived. However, the trial court's decision fails to take into consideration subsection (b) of that local rule, which provides as follows:

{¶ 28} "(b) If a Guardian Ad Litem is requested by an indigent party who has filed a poverty affidavit, the Guardian Ad Litem's fee *shall* be assessed as court costs and payment may be made in incremental payments. If both parties are found to be indigent the court may direct the Guardian Ad Litem fees to be paid from county funds." (Emphasis added.)

{¶ 29} The trial court was entitled to require the appellant to post a bond to secure the fee for the appointment of a GAL provided the appellant was not indigent. However, the appellant requested that the court tax as costs (as was permitted by Local Rule 29.15(b)) any fees or deposits because appellant was indigent. The court denied appellant's request because she had failed to accurately state her financial status. Appellant had given income figures of $15,303 and $19,322 in 2003 and $16,128 in 2005.

{¶ 30} While the income figures are inconsistent, the three figures are not that far apart, and all three income figures indicate limited financial circumstances. In addition, appellant had filed an affidavit on July 19, 2005, which set forth her income and expenses and indicated that she was barely making it. And appellant was represented by Legal Aid when she filed her complaint for divorce and again

as of July 19, 2005. Under these circumstances, we find that the court abused its discretion in determining that appellant's request for a GAL was waived when she failed to post a $500 bond within 30 days of the court's order to do so.

{¶ 31} When Loc.R. 29.15 is read in its entirety along with R.C. 3109.04(B)(2)(a), we find that a trial court should determine that a request for a GAL has been waived only when a person fails to post a reasonable amount of bond within a reasonable amount of time. A court must use a person's financial circumstances to determine what is reasonable. And when, as in this case, financial affidavits of a party generally indicate financial distress, but the trial court finds some inconsistencies in the financial affidavits, a hearing on the issue would be more appropriate than concluding that the appellant was not indigent and was not entitled to some accommodation when determining how the GAL would get paid. Based on the financial information of appellant that was before the trial court, we do not find that appellant was ordered to post a reasonable amount of bond within a reasonable time. In other words, the trial court in the case sub judice abused its discretion when, based on appellant's financial information, it ordered her to post a $500 bond within 30 days and then deemed that appellant's request for a GAL was waived when appellant failed to comply.

{¶ 32} Appellant's first assignment of error is sustained.

## II

{¶ 33} The appellant argues in her second assignment of error that the trial court erred in sua sponte revoking her status as residential parent without an emergency need to do so, without evidence on the record, and absent a motion by either parent, notice to either parent, or a prompt post-change hearing. We agree.

{¶ 34} The Ohio Supreme Court has directed us to use the abuse-of-discretion standard in reviewing decisions in domestic-relations cases. *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028. Indeed, "[t]he domestic relations court decides to whom the care, custody, and control of a minor child shall be awarded, giving utmost consideration to the best interest of the child. R.C. 3109.04(A). A reviewing court must uphold a trial court's decision in a child custody matter unless the trial court abused its discretion. See, *In re Kennedy* (1994), 94 Ohio App.3d 414 [640 N.E.2d 1176]. An abuse of discretion constitutes 'more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.' *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219 [5 OBR 481, 450 N.E.2d 1140]." *Sharp v. Sharp* (June 29, 1995), Cuyahoga App. No. 66684, 1995 WL 386974, *4.

{¶ 35} "Most instances of an abuse of discretion result in decisions that are unreasonable, as opposed to arbitrary and capricious. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.* (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597. A decision that is unreasonable is one that has no sound reasoning process to support it. Id." See *Bank One, NA v. Ray*, Franklin App. No. 04AP907, 2005-Ohio-3277, 2005 WL 1515360.

{¶ 36} In the case before us, the action of the trial court in sua sponte revoking appellant's residential parent status did not arise out of an emergency situation. Nor did it occur in response to a motion filed by the appellee. It occurred following a request by the appellant that the in camera interview be rescheduled ten days later than the court had originally planned due to a conflict with her work schedule and following the appellant's request for the appointment of a GAL on behalf of her children. Appellant received no notice of the proposed change of custody or of what she had done wrong. The change-of-custody order was based on facts not made available to the parties, or even on the record for that matter. It was contrary to basic tenets of due process.

{¶ 37} In the case of *Szerlip v. Szerlip*, Knox App. No. 01CA16, 2002-Ohio-2540, 2002 WL 1270849, we held: "The Ohio Constitution, Section 16, Article I, undeniably affords the parties in a civil case the right to due process of law, the 'basic thrust' of the clause being a requirement for notice and an 'opportunity to be heard.' See *Ohio Valley Radiology Assoc., Inc. v. Ohio Valley Hosp. Assn.* (1986), 28 Ohio St.3d 118, 124–125 [28 OBR 216], 502 N.E.2d 599. Unless notice and an opportunity for a fair hearing are given to opposing parties, a trial court has no authority to take action, *sua sponte,* prejudicial to the opposing party. See, e.g., *Rice v. Bethel Assoc., Inc.* (1987), 35 Ohio App.3d 133, 520 N.E.2d 26." *Szerlip* at ¶ 28.

{¶ 38} See, also, *Ohio Furniture Co. v. Mindala* (1986), 22 Ohio St.3d 99, 22 OBR 133, 488 N.E.2d 881; and *Shoreway Circle, Inc. v. Gerald Skoch Co., L.P.A.* (1994), 92 Ohio App.3d 823, 637 N.E.2d 355.

{¶ 39} Further, the sua sponte change of custody did not take into account what was in the best interests of the children. Rather, it appears to have been done to punish the appellant for some perceived wrongdoing. That is not the function of the family court. The function of the family court in cases involving children and child custody is to make decisions giving the utmost consideration to the welfare of the children.

{¶ 40} The decision of the trial court in sua sponte revoking appellant's residential status constitutes an abuse of discretion, and the appellant's second assignment of error is sustained.

### III

{¶ 41} In her third assignment of error, the appellant argues that the trial court erred when it refused to provide her with transcripts of the in camera interviews of the minor children. We disagree.

{¶ 42} R.C. 3109.04 addresses in camera interviews and states:

{¶ 43} "(2) If the court interviews any child pursuant to division (B)(1) of this section, all of the following apply: * * *

{¶ 44} "(c) The interview shall be conducted in chambers, and no person other than the child, the child's attorney, and judge, any necessary court personnel, and, in the judge's discretion, the attorney of each parent shall be permitted to be present in the chambers during the interview.

{¶ 45} "(3) No person shall obtain or attempt to obtain from a child a written or recorded statement or affidavit setting forth the child's wishes and concerns regarding the allocation of parental rights and responsibilities concerning the child. No court, in determining the child's best interest for purposes of making its allocation of the parental rights and responsibilities for the care of the child or for purposes of resolving any issues related to the making of the allocation, shall accept or consider a written or recorded statement or affidavit that purports to set forth the child's wishes and concerns regarding those matters."

{¶ 46} This court has interpreted sections (2)(c) and (3) of R.C. 3109.04 to mean that the in camera interviews are to remain confidential. In *Linger v. Linger* (June 30, 1993), Licking App. 92–CA–120, 1993 WL 274318, we stated, "[T]he statute appears to indicate that the interviews between the child and judge are to be confidential and are not to be disclosed to the parents." Id. at *1.

{¶ 47} We addressed the in camera interview issue again in *Patton v. Patton* (Jan. 9, 1995), Licking App. No. 94 CA 40, 1995 WL 42497, dismissed, appeal not allowed by 72 Ohio St.3d 1527, 649 N.E.2d 837 (1995). In *Patton,* the in-camera interviews of the minor children were, initially, not recorded. However, upon remand, the trial court conducted separate recorded interviews with each of the minor children and thereafter entered a recommendation as to custody. The appellant in *Patton* appealed the judgment and, inter alia, requested an opportunity to review the transcript of the in camera interviews, which the trial court denied. In affirming the decision of the trial court, we stated, "[T]he interview is recorded for the purpose of protecting the parties in that an appellate court may review the recorded interviews and determine whether undue influence has been exerted, or whether the court has made proper findings of fact regarding the in chambers interviews. However, the legislative mandate that no person shall obtain from a child any recorded statement regarding the allocation of parental rights and responsibilities concerning such child clearly minimizes the chilling

effect of the in chambers interview and provides a protection of the minor children. Moreover, the statute is now in conformity with the clear intent of the legislature in protecting the best interests of the children." Id. at *3.

{¶ 48} The *Patton* reasoning was followed again by this court in *Beil v. Bridges* (July 13, 2000), Licking App. 99–CA–00135, 2000 WL 977221, in which the appellant argued that the trial court erred in sealing the transcript of its in camera interview with the minor child. The *Beil* court, citing *Patton,* supra, stated that the appellant had not demonstrated that the sealing of the transcript violated her right to due process, or the Open Courts provision of the Ohio Constitution. Id. at *2.

{¶ 49} This reasoning is in conformity with the general proposition that the overriding concern of courts in custody cases must be the best interests of the child, which may, at times, conflict with the due-process rights of the parents. However, due process is a flexible concept and only requires the procedural protection that a particular situation warrants. *Mathews v. Eldridge* (1976), 424 U.S. 319, 334, 96 S.Ct. 893, 47 L.Ed.2d 18. The due-process rights of the parents must, therefore, be balanced against the best interests of the child.

{¶ 50} The requirement that the in camera interviews be recorded is designed to protect the due-process rights of the parents. The due-process protection is achieved in this context by sealing the transcript of the in camera interview and making it available only to the courts for review. This process allows appellate courts to review the in camera interview proceedings and ascertain their reasonableness, while still allowing the child to "feel safe and comfortable in expressing his opinions openly and honestly, without subjecting the child to any additional psychological trauma or loyalty conflicts." See House, Considering the Child's Preference in Determining Custody: Is It Really in the Child's Best Interest?, 19 J.Juv.L. 176 (1998), 186.[1]

{¶ 51} The position that transcripts of in camera interviews shall be sealed and inaccessible to the parents was adopted by the Ninth District Court of Appeals in the case of *In re Longwell* (Aug. 30, 1995), Lorain App. Nos. 94 CA 006006 and 94 CA 006007, 1995 WL 520058. In *Longwell,* the parties seeking divorce had one child. The minor child was interviewed in camera, and the transcript of the interview was ordered to be sealed. The child's mother appealed the judge's various findings and orders, in part because she was denied access to the transcript of the in camera interview. The *Longwell* court reasoned that R.C. 3109.04(B)(2)(c) provided that parents may not attend in camera interviews.

---

1. Although this process requires a party to "blindly" raise an assignment of error on the in camera interview issue, it still allows for appellate review while protecting the best interests of the child.

Further, the parent's attorney may attend the interview only with the court's permission. The *Longwell* court opined that this statutory language "suggests that the General Assembly intended to create 'stress-free environment * * * [so that] [c]hildren should display candor in setting forth their feelings' regarding custody." Id. at *3, quoting *Patton v. Patton* (Jan. 9, 1995), 5th Dist. No. 94 CA 40, at 3, 1995 WL 42497. According to the *Longwell* court, affording parents access to the transcript of the in camera interview would contravene this intent.

{¶ 52} The *Longwell* court stated further: "[W]e think this confidentiality serves more fundamental purposes, and protects more information than simply the child's ultimate conclusion as to which parent the child most desires live with. Domestic relations judges typically use the in-camera interview to discuss a wide variety of issues, including any problems the child may be having with the parents, step-parents, siblings, etc. In this way, the judge can identify areas of potential trouble, and may discover, *inter alia,* that the intervention of a social worker is necessary, or that a new hearing on visitation should be held. We believe that judges should be allowed to keep their private conversations with the children of divorced parents confidential, as many times it is only this promise of confidentiality that convinces these embattled children to speak freely." Id. at *4. The *Longwell* court thus held that "the parents of a child that is the subject of a custody dispute do not have a right of access to the sealed transcript of an in-camera interview between the child and the judge." Id.

{¶ 53} The Twelfth District Court of Appeals has also held that in camera interviews should remain confidential and inaccessible to the children's parents. In the case of *Donovan v. Donovan* (1996), 110 Ohio App.3d 615, 674 N.E.2d 1252, the court held "[W]e join the Fifth District Court of Appeals * * * and hereby require trial courts to make a record of any in camera interview with children involved in custody proceedings, to be kept under seal for review on appeal as was done in this case. We require that an audio recording, video recording or stenographic record be made and, in order to preserve the privacy of the setting, that no person other than the child and court personnel authorized by the judge be present with the judge in chambers. This will ensure that an appellate court can effectively review the trial court's decision pertaining to custody matters." Id. at 620, 674 N.E.2d 1252. See, also, *Willis v. Willis,* 149 Ohio App.3d 50, 2002-Ohio-3716, 775 N.E.2d 878 (in which the Twelfth District Court of Appeals once again held that in camera interviews of children conducted pursuant to R.C. 3109.04 are confidential and not to be disclosed to the parents).

{¶ 54} The Eleventh District Court of Appeals has also held that in camera interviews with children in custody cases should be kept confidential. In *Jackson v. Herron,* Lake App. No. 2003–L–145, 2005-Ohio-4046, 2005 WL 1861965, the court discussed in camera interviews: "The purpose of having the trial judge

conduct in camera interviews is to provide children with a forum for openly discussing their concerns and preferences regarding their own custody. *Patton v. Patton* (Jan. 9, 1995), 5th Dist. No. 94 CA 40 [1995 WL 42497, at *3], 1995 Ohio App. LEXIS 357, at *9 ('children should display candor in setting forth their feeling under the circumstances and conditions set forth [in the statute]')." *Jackson* at ¶ 17. The *Jackson* court, citing *Longwell,* supra, went on to hold that the appellant mother was not entitled to access a transcript of the in camera interview of her child. Id. at ¶ 23.

{¶ 55} Based upon the foregoing, appellant's third assignment of error is not well taken and is therefore overruled.

{¶ 56} Accordingly, we reverse the decision of the trial court as to assignment of error numbers one and two, and we remand the matter to the trial court for rehearing on the custody issue following the appointment of a guardian ad litem. As to assignment of error number three, we affirm the decision of the trial court, which held that the in camera interviews of the children remain confidential.

Judgment accordingly.

WISE, P.J., and GWIN, J., concur.